Cyril SMITH and Clara J. Smith, Administrators of the Estate of Dennis E. Smith, Deceased, Cyril Smith and Clara J. Smith, Appellants,

v.

Charles L. BAULE, Louis C. Barrett, Dallas L. Murphy, Raymond J. Scherrman, Dubuque County, Iowa, a Municipal Corporation, Illinois Central Gulf Railroad, a Delaware Corporation, Flynn Ready-Mix Concrete Co., an Iowa Corporation, and Flynn Ready-Mix, Inc., an Iowa Corporation, Appellees.

No. 59673.

Supreme Court of Iowa.

Dec. 21, 1977.

Steven L. Nelson of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellants.

Robert Bertsch and Brendan T. Quann of O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, for appellee, Illinois Central Gulf Railroad.

MOORE, Chief Justice.

Plaintiffs appealed trial court's dismissal of their wrongful death action as to defend-

ant, Illinois Central Gulf Railroad, a Delaware corporation. They contend their amendment making said corporation a defendant should have related back to the date the original petition was filed. Trial court disagreed and held the action against the corporation was barred by Code section 614.1(2), the two-year statute of limitations. We agree and affirm.

On February 11, 1976, plaintiffs filed a petition alleging in pertinent part that plaintiffs' decedent was killed February 19, 1974 in an automobile accident caused by the negligence of multiple named defendants. Plaintiffs alleged defendant "Illinois Central Railroad, an Illinois Corporation" was negligent in dumping slush and water upon a highway without warning to travelers.

The sheriff's return of service of original notice on defendants included, "I further certify that on the same day [February 13, 1976] I served the same on Illinois Central R. R. Co., and Illinois Corporation, by delivering a copy thereof to Thomas Flynn, Agent for said defendant, in the City of Dubuque, Julien Township, Dubuque County, State of Iowa."

On March 4, 1976 Illinois Central Railroad filed a special appearance asserting the district court lacked jurisdiction because this corporate entity had been dissolved pursuant to law and did not exist either at the time of the accident or subsequently thereto. The trial court sustained the special appearance on March 30. No appeal has been taken from that order.

On March 18, plaintiffs amended their petition providing in relevant part:

"1. The Caption should be amended as follows:

"a. Illinois Central Industries, a Delaware Corporation and Illinois Central R. R. Co., an Illinois Corporation shall be deleted as Defendants.

"b. Illinois Central Gulf Railroad, A Delaware Corporation should be added as a Defendant."

Additionally the amendment substituted as a new defendant, Illinois Central Gulf Railroad for defendants Illinois Central Industries, Inc., and Illinois Central R. R. Co., throughout the petition. For example, plaintiffs in paragraph 8 of their amendment stated:

"In Paragraph 16 of Counts I and II substitute Defendant, Illinois Central Gulf Railroad for Defendants, Illinois Central Industries, Inc., and Illinois Central R. R. Co."

On May 7, 1976 plaintiffs served notice, with petition and amendment attached, of their action against Illinois Central Gulf Railroad. Service was made on J. W. Dodge, division superintendent, at Waterloo, Iowa.

On May 27, 1976 Illinois Central Gulf Railroad filed a motion to dismiss plaintiffs' petition on the ground:

"1. That the Petition as amended fails to state a claim upon which the relief sought can be granted for the reason that no action was commenced against this defendant within the applicable period of limitations as provided in 1975 Code of Iowa, Section 614.1(2) in that on the face of the pleadings filed in this cause it affirmatively shows that this defendant was not so named as a defendant until the filing of plaintiffs' 'First Amendment to Petition' on March 18, 1976."

In resistance plaintiffs asserted their amendment was filed to correct a misnomer in the original petition and relates back to the date of filing, February 11, 1976. They pointed out a merger of Illinois Central Railroad with Illinois Central Gulf Railroad took place on August 10, 1972. The record reveals no evidence or contention that Thomas Flynn was ever an agent or employee of Illinois Central Gulf Railroad, the Delaware corporation.

On June 21, 1976 the trial court sustained the motion to dismiss, stating, "It appears to be the better rule that the amendment does not relate back * * *."

Plaintiffs have appealed from this ruling. As in the trial court they argue "the plaintiffs' amendment to petition filed after the statute of limitations had run, served only to correct a misnomer in the original peti-

tion and relates back to the date of the filing of the original petition."

Illinois Central Gulf Corporation, the Delaware corporation, maintains it was not named a defendant until plaintiffs amended their petition after the running of the statute of limitations and therefore said amendment should not be construed as relating back to the date the original petition was filed.

I. Plaintiffs-appellants cite and rely on three cases: *Hickman v. Hygrade Packing Company*, Iowa, 185 N.W.2d 801; *Thune v. Hokah Cheese Company*, 260 Iowa 347, 149 N.W.2d 176 and *Grooms v. Greyhound Corporation*, 6 Cir., 287 F.2d 95.

In *Hickman*, where we reversed the trial court, we held that misnomer in notice of action naming "Hygrade Packing Company, Postville, Iowa" as defendant did not bring "Hygrade Food Products Corporation" into court, and that the notice was void and could not be made valid by amendment.

In *Hickman* we point out *Thune* dealt with a different kind of situation. In *Thune* defendant was sued and served under its trade name rather than in the name of the individual owner, Willard Potter. Potter operated his business and his vehicle referred to in plaintiffs' petition was registered in his trade name, Hokah Cheese Company. We held the real defendant was actually before the court at all times under his assumed fictitious name and approved amendment correcting the misnomer. We there noted the case did not involve substitution of one party for another after the statute of limitations had run.

The holding in *Grooms v. Greyhound Corporation*, 6 Cir., 287 F.2d 95, is premised upon a specific and unique provision of the Ohio Rules of Civil Procedure which provide that when an attempt to commence an action is followed by good service within 60 days, the action is deemed to have been timely commenced even though the statute of limitations has run between the date of the summons and the date of actual service. We have no such rule, statute or holding. Here actual service was made almost three months after filing of plaintiffs' petition.

II. In addition to arguing this is not a case involving correction of a misnomer, defendant, Illinois Central Gulf Railroad, the Delaware corporation, asserts the amendment substitutes one corporation for another after running of the statute of limitations and therefore the trial court was correct in sustaining its motion to dismiss. Much has been written in this area of the law.

After citing and quoting 8 A.L.R.2d, section 81, page 166 and a rather thorough analysis of the prime authorities we state in *Shellhorn v. Williams*, 244 Iowa 908, 918, 58 N.W.2d 361, 367:

"In the case before us for review entirely new parties were substituted. There was no misnomer or defect in the description or characterization of the defendant but an entire change of parties. We hold this is not proper, particularly after the statute of limitations has run."

The annotation in 8 A.L.R.2d, section 81, page 166 states:

" ' * * * whether an amendment of process or pleading, or both will be allowed which changes the description or characterization of a party after the statute of limitations has run, from a corporation to an individual, copartnership, or other association * * * seems to depend upon whether the misdescription or mischaracterization is interpreted as merely a misnomer or defect in the description or characterization, or whether it is deemed a substitution or entire change of parties; in the former case an amendment will be held to relate back to the commencement of the action, while in the latter the amendment will be held to amount to institution of a new action.

" ' * * * where an action is brought against a corporation whereas it should have been brought against a partnership, or vice versa, an amendment substituting the proper party defendant after the statute of limitations has run is generally held to be vulnerable to a plea of the statute. And the same rule applies in the case of the substitution of individuals as

defendants for the partnership or corporation, or vice versa.' "

In 51 Am.Jur.2d, Limitation of Actions, section 294, page 805, the editor writes:

"If the substitution of a corporation as party defendant for another corporation, after the statute of limitations has run, amounts to no more than the rectification of a misnomer, the statute of limitations is not a bar; where, however, the plaintiff sued the wrong party, the mistake cannot be remedied after the period of limitations has elapsed any more than in the case where a wrong individual has been sued. Thus, there are many cases in which it has been held that where an action is brought against a corporation, its commencement within the limitation period is ineffective to stop the running of the statute of limitations against another corporation substituted for it after the statute has run. * * * ."

The general applicable principles are thus stated in 54 C.J.S. Limitation of Actions, section 277b, page 317:

"For limitation purposes, an amendment substituting a new defendant is regarded as the commencement of a new action or proceeding against such defendant, and does not relate back to the commencement of the original action, where a new cause of action is set up by the amendment, or the original defendant was dead *or otherwise nonexistent at the time of the attempted commencement of the action and therefore no action was commenced against anyone prior to the amendment,* or the suit has abated as to the original sole defendant, *or the case is one of a mistake as to the identity,* rather than a misnomer, of the person liable. * * * ." (Emphasis added.)

See also 4 Wright and Miller, Federal Practice and Procedure, section 1131.

The facts and stated legal principles in *Strauss v. Rex,* D.C.Pa., 191 F.Supp. 128, 129 seem particularly applicable here:

"Despite the tendency in our federal courts toward extreme liberality in allowing amendments under Rules 4(h) and 15(a), F.R.Civ.P., 28 U.S.C.A., the court is of the opinion that the effect of the amendment is to substitute for defendant an entirely new party. Unquestionably, plaintiffs attempted to bring suit against the owner of the Howard Johnson Restaurant in Uniontown. However, they named the wrong defendant. Ownership of the particular restaurant in question was not in the named corporate defendant, but in an individual and his wife. Clearly, this is not a case in which a plaintiff seeks to correct a misnomer where the proper party already is in court. See *Sechrist v. Palshook,* D.C.M.D. Pa.1951, 97 F.Supp. 505. Neither of the individual defendants is in court. To permit this amendment to relate back to the original complaint would deprive the substituted defendants of their defense of the statute of limitations. *Davis v. L. L. Cohen & Company, Inc.,* 1925, 268 U.S. 638, 45 S.Ct. 633, 69 L.Ed. 1129; *Jacobsen v. United States,* D.C.E.D.Pa.1958, 160 F.Supp. 491; *Lomax v. United States,* D.C.E.D.Pa.1957, 155 F.Supp. 354; *Kerner v. Rackmill,* D.C.M.D.Pa.1953, 111 F.Supp. 150; *Sanders v. Metzger,* D.C.E. D.Pa.1946, 66 F.Supp. 262.

"The court is aware of the great hardship which will result from the granting of defendant's motion. Nevertheless, this is a serious risk which must be appreciated by a plaintiff who delays until the period of limitations has almost run before commencing his action."

In *Kerner v. Rackmill,* M.D.Pa., 111 F.Supp. 150, 151, the court states:

" * * * , if the effect of the amendment is to substitute for the defendant a new party, or add another party, such amendment amounts to a new and independent cause of action and cannot be permitted when the statute of limitations has run. (Citations). * * * ."

In *Munetz v. Eaton Yale and Towne, Inc.,* E.D.Pa., 57 F.R.D. 476, it was held that when the effect of an amendment of the caption of the complaint or summons to correct the party named is to bring before the court for the first time a completely different entity that had not had notice of

suit, the amendment could not be allowed to relate back and avoid the statute of limitations as to the new defendant.

See also *Thomas v. Cactus Drilling Corporation of Texas*, Tex.Civ.App., 405 S.W.2d 214; *Vari v. Food Fair Stores, New Castle, Inc.*, 57 Del. 257, 199 A.2d 116.

█ III. As pointed out in *Patten v. City of Waterloo*, Iowa, 260 N.W.2d 840 (1977) rule 59.1, Rules of Civil Procedure, effective July 1, 1975, is identical to rule 4 (h), Federal Rules of Civil Procedure. Thus we are committed to liberal construction of our rules of civil procedure to insure resolutions of disputes on their merits. See 62 Iowa L.Rev. 192, 229–231. However, at page 230 the author writes:

"* * *, when the amendment has sought to add a new party after the limitations period has run, it is ordinarily rejected, on the premise that it amounts to an independent cause of action."

█ IV. The record before us reveals plaintiffs simply made a mistake in identity of the railroad they intended to sue. It was nonexistent and of course valid service could not be made on it. Jurisdiction of defendant, Illinois Central Gulf Railroad, the Delaware corporation, was first obtained after the amendment making it a defendant. The statute of limitations had run.

We note plaintiffs' present appeal counsel entered this case after it was prepared and assigned for oral submission to this court.

This is not a case of correction of a misnomer but rather the substitution of a new party after the statute of limitations had run. The ruling of the trial court was correct.

AFFIRMED.

MASON, RAWLINGS, LeGRAND and REES, JJ., concur.

UHLENHOPP, HARRIS and McCORMICK, JJ., dissent.

REYNOLDSON, J., takes no part.

UHLENHOPP, Justice (dissenting).

The issue is whether Smiths' cause of action against Illinois Central Gulf Railroad is barred by the statute of limitations.

Prior to August 10, 1972, a railroad corporation named Illinois Central Railroad Company (Illinois Central), which was organized in Illinois, operated a railroad upon tracks and a viaduct over Iowa Highway 416 about a half-mile west of Epworth, Iowa. A separate corporation named Gulf, Mobile & Ohio Railroad Company (Gulf) also owned and operated a railroad.

On the date named, those two corporations merged into one corporation, named Illinois Central Gulf Railroad (Illinois Central Gulf), which holds its charter from Delaware.

According to Smiths' petition filed in 1976, on February 19, 1974, water, run-off, and slush had been drained and allowed to accumulate on the highway under the railroad viaduct as a result of the negligence of the railroad and the other defendants, whereby Dennis E. Smith was killed in an auto mishap. Smiths sought damages from defendants for wrongful death.

In the petition and accompanying original notice, Smiths named the railroad owning and operating the tracks and viaduct as "Ill. Central R. R. Co.", which would appear to mean Illinois Central Railroad Company. (In the petition they referred to the railroad as "Illinois Central Railroad Co.") Smiths also referred to the railroad at various places in the petition as an Illinois corporation. At the times of the auto mishap and the commencement of suit, however, the legal name of the corporation which owned and operated the tracks and viaduct was Illinois Central Gulf Railroad, by virtue of the merger. Moreover, Illinois Central Gulf was a Delaware, not an Illinois, corporation.

A sheriff's deputy served the original notices with petition attached. Illinois Central appeared specially averring the facts as to the merger into Illinois Central Gulf and as to the nonexistence of Illinois Central thereafter. One of the original notices which the deputy served on this first occa-

sion he delivered to E. Fred Meeker. In his return the deputy stated that he delivered the notice to Meeker for Illinois Central Industries, one of the other defendants. Meeker, however, was the Dubuque Yardmaster of Illinois Central Gulf. That Illinois Central Gulf received actual knowledge of the institution of the action is shown by the facts (1) that one of the original notices was thus delivered to its Yardmaster, Meeker, (2) that Illinois Central Gulf's own attorneys, the O'Connor firm of Dubuque, filed the special appearance on behalf of Illinois Central, and (3) that Illinois Central Gulf's own secretary-treasurer, John B. Goodrich, signed an affidavit attached to the special appearance.

The trial court sustained the special appearance.

Thereafter Smiths amended their petition to delete Illinois Central Railroad Company and add Illinois Central Gulf Railroad, to add "Gulf" between "Central" and "Railroad," and to insert "Illinois Central Gulf Railroad" at various places in the petition. The sheriff's deputy thereupon served another original notice, but the trial court found that notice insufficient for other reasons. The sheriff's deputy then served a third original notice correctly naming Illinois Central Gulf Railroad.

By this time, however, the statute of limitations had run. Illinois Central Gulf appeared and moved to dismiss the amended petition as barred by limitations. The trial court sustained the motion, and Smiths appealed.

I. The first question is whether the use of the wrong name in the original petition is fatal.

Until 1975 this court was quite strict in the matter of correctly naming a defendant. Although a corporation actually knew of a suit from service of notice upon it, knew from the allegations of fact in the petition that it was the intended defendant, and suffered no harm such as default because of the misnomer, we permitted only trivial name deviations. *Hickman v. Hygrade Packing Co.,* 185 N.W.2d 801 (Iowa).

Rule 4(h) of the Federal Rules of Civil Procedure states:

At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

In 1974, following our *Hygrade Packing* case, our advisory committee on rules recommended that we adopt federal rule 4(h) as part of the Iowa Rules of Civil Procedure. Accordingly in January 1975 we filed it with the legislature as our proposed rule 59.1. The legislature did not disapprove the proposal, and so rule 59.1 became one of our rules on July 1, 1975.

Under federal rule 4(h) and the predecessor statute, 28 U.S.C. § 767, the federal courts have pursued a course described as one of extreme liberality in allowing amendments where no hardship results and no injustice is done. *United States v. Van Dusen,* 78 F.2d 121 (8 Cir.). Examples are *Hirsch v. Bruchhausen,* 284 F.2d 783 (2 Cir.) (amendment to allow partners substituted for corporation); *Grandey v. Pacific Indem. Co.,* 217 F.2d 27 (5 Cir.) (name change); *United States v. A. H. Fischer Lumber Co.,* 162 F.2d 872 (4 Cir.) (no one misled by misnomer); *In re National Student Marketing Litigation,* 413 F.Supp. 1159 (D.C.) (trust named defendant rather than trustee bank); *Infotronics Corp. v. Varian Associates Corp.,* 45 F.R.D. 91 (S.D.Tex.) (actual defendant had assumed all obligations of erroneously-named defendant); *Bowles v. Marx Hide & Tallow Co.,* 4 F.R.D. 297 (W.D.Ky.) (corporation erroneously named defendant although it had been dissolved and business was operating as partnership).

The present case is a classic one for application of new rule 59.1. It again gives us the choice of whether we will or will not apply the more liberal view which the new rule contemplates. See *Patten v. City of Waterloo,* 260 N.W.2d 840 (Iowa).

Rule 59.1 contains a different approach on wrong names. The principal emphasis under the rule is upon the consequences of

the mistake: an amendment may be allowed unless it "clearly appears" that "material prejudice" would result to the "substantial rights" of the defendant.

In determining whether prejudice would result, the Nevada Supreme Court devised some useful inquiries in *Servatius v. United Resort Hotels, Inc.,* 85 Nev. 371, 455 P.2d 621: Does the defendant have actual notice of the institution of the action? Does the defendant know that it is the proper defendant in the action? Was the defendant misled to its harm by the mistake?

The misnomer before us raises two problems. Smiths should have stated that "Illinois Central Gulf Railroad" was the name of the railroad-defendant. One problem is whether the omission of "Gulf" in the name and the addition of "an Illinois corporation" instead of "a Delaware corporation" caused material prejudice to Illinois Central Gulf Railroad.

Returning to the inquiries in the *Servatius* case, Illinois Central Gulf was not prejudiced from lack of notice of the action; it had actual notice. It was not prejudiced in having to wonder whether it was the defendant actually intended to be sued; the allegations of the petition dealt with the railroad operating the tracks and viaduct over Highway 416 about a half-mile west of Epworth, Iowa; Illinois Central Gulf must have known it owned and operated those tracks and that viaduct. See *Western Union Tel. Co. v. State,* 82 Md. 293, 33 A. 763 (true defendant knew the telephone pole belonged to it). Nor was it misled to its harm by the mistake, as by permitting default in the honest belief that the different name must refer to some other railroad—it again knew that it operated the tracks and viaduct in question and it knew that it was the successor to Illinois Central and Gulf.

Indeed, Smiths' whole course of action, including addition of the unnecessary words, "an Illinois corporation," must have told Illinois Central Gulf that Smiths were mistaken. Under new rule 59.1, fairness dictates that Illinois Central Gulf, which could hardly have been misled, should not be able to interpose the statute of limitations against Smiths, who plainly were laboring under mistake.

The other problem is whether Illinois Central Gulf is right that this is simply a case of suing the wrong party. For example, if a plaintiff intentionally sues and serves notice on X Corporation of Chicago as the manufacturer of a defective product and, after the statute of limitations has run, learns that unrelated Y Corporation of Philadelphia manufactured the product, the plaintiff cannot then save himself from the statute of limitations by bringing in Y Corporation as a defendant. 51 Am.Jur.2d Limitation of Actions § 294 at 805; 54 C.J.S. Limitation of Actions § 277 at 317.

The present case differs from the illustration in several respects. First, in law only one corporation and one railroad exists, now named Illinois Central Gulf. Second, Smiths did not intend to sue an unrelated corporation, but rather the very railroad which ran trains over this trackage and viaduct. Viewed practically and liberally as rule 59.1 contemplates, the change which the merger wrought was not really so much an alteration in identity of the Illinois Central Railroad as a continuation of that railroad joined with another one with "Gulf" added to the name. Thus Smiths' error was more of a mistake of name than a mistake of identity. Third, Illinois Central Gulf had actual notice of the action. And fourth, the allegations of the petition attached to the notice gave Illinois Central Gulf knowledge that the trackage and viaduct were properties which it owned and operated; hence Illinois Central Gulf must have known it was the intended defendant.

Whether Smiths' mistake would have been fatal when the *Hygrade Packing* case was law, query. To hold it fatal under new rule 59.1 would frustrate the rule's objective of turning the result on presence or absence of material prejudice. Cases dealing with somewhat similar problems include the *Hirsch, National Student Marketing, Infotronics, and Bowles* decisions, supra, and *Graves v. General Ins. Corp.,* 412 F.2d 583 (10 Cir.); *Bates v. Wagon Wheel Country Club, Inc.,* 132 Ill.App.2d 161, 266

N.E.2d 343; *Nelson v. Glenwood Hills Hospitals*, 240 Minn. 505, 62 N.W.2d 73; *Dart Drug Corp. v. Hechinger Co., Inc.*, 272 Md. 15, 320 A.2d 266; *Dunlevy v. Martin Dennis Co.*, 30 N.J.Super. 446, 104 A.2d 870; *Pepsi-Cola Metropolitan Bottling Co. v. Miller*, 50 Misc.2d 40, 269 N.Y.S.2d 471. See generally Anno. 8 A.L.R.2d 6.

II. Since Smiths' original petition was not fatally deficient as to Illinois Central Gulf, the petition saved the case against that defendant from the statute of limitations. This follows from rule 48, R.C.P. ("A civil action is commenced by filing a petition with the court."). But did Smiths let Illinois Central Gulf out of the case and then sue it again after the statute had run, by virtue of the form of their amendment to the petition?

In the first place, Illinois Central Gulf did not so contend in the trial court or here. That should end consideration of this question.

In the second place, assuming arguendo that Illinois Central Gulf had raised this contention, the argument is not meritorious. True, Smiths stated in the amendment that they amended the caption of the petition so that "Illinois Central R.R. Co., an Illinois Corporation shall be deleted" and "Illinois Central Gulf Railroad, a Delaware Corporation should be added", but the whole of the proceedings demonstrates that Smiths were not dismissing out the true defendant but were changing names. This follows from paragraphs 2 through 8 of the amendment in which Smiths changed the petition throughout from Illinois Central to Illinois Central Gulf and inserted "Gulf" between "Central" and "Railroad." It follows from Illinois Central Gulf's special appearance, which does not state that Smiths dismissed Illinois Central out but rather is based on the contention that Illinois Central Gulf was not originally a defendant. It follows from Smiths' resistance to special appearance in which they recite that their amendment changes "all reference to Illinois Central Railroad Co. to Illinois Central Gulf Railroad." It follows from the trial court's sustaining the special appearance which was based on the contention that Illinois Central Gulf was not originally a defendant. And it follows from the failure of Gulf, in the trial court or this court, to contend that Smiths dismissed out the true defendant by the form of their amendment.

Under new rule 59.1 Smiths' misnaming the true defendant was not fatal, and Smiths did not dismiss that defendant from the case. Smiths' petition tolled the statute of limitations and the trial court should have overruled the motion to dismiss.

HARRIS and McCORMICK, JJ., join in this dissent.